# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Jacorey S.*, 2012 IL App (1st) 113427

---

| | |
|---|---|
| Appellate Court Caption | *In re* JACOREY S. and JAKYLAH S., Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. Andre S., Respondent-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-11-3427 |
| Filed | May 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The finding that respondent was unfit as the father of his children was affirmed, since respondent did not make reasonable progress toward reunification with his twins in any of the three nine-month periods following the adjudication of neglect and he failed to prove he maintained a reasonable degree of interest, concern or responsibility as to the children's welfare, especially when he did not complete individual therapy, the minimum requirement in the process toward reunification. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 07-JA-8, 07-JA-10; the Hon. Nicholas Geanopoulos, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Vitale, of Berwyn, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Jennifer Streeter, and Nicole Lucero, Assistant State's Attorneys, of counsel), for the People.

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Christopher Williams, of counsel), guardian *ad litem*.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal arises from an October 28, 2011 order entered by the circuit court of Cook County which terminated the parental rights of Ericka M. (Ericka) and respondent-appellant Andre S. (Andre) as to Jacorey S. (Jacorey) and Jakylah S. (Jakylah), and appointed D. Jean Ortega-Piron (Ortega-Piron) as Jacorey's and Jakylah's (collectively, the twins) temporary guardian with the power to consent to adoption. On appeal, Andre argues that petitioner-appellee the People of the State of Illinois (State) failed to prove by clear and convincing evidence that Andre was unfit as a parent pursuant to section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2008)) and section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2008)). For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3    Andre and Ericka have five children together: Celeste S. (Celeste), born on October 19, 2002; Jaleel S. (Jaleel), born on January 21, 2005; twins Jacorey and Jakylah, born on December 5, 2005; and Andre S., born on January 20, 2008. Ericka also has another child, Camille S. (Camille), with an unknown father, born on December 1, 2001. This case only involves the twins. After the twins were born, Ericka gave Jacorey to a family friend, Pavielle S. (Pavielle), and gave Jakylah to another family friend, Antoinette R. (Antoinette), because she could not care for them. Ericka retained custody of her other three children. In September 2006, the twins had an overnight visit with Ericka. Both Jacorey and Jakylah appeared to be fine when they were dropped off by their guardians; however, both children had bruises on their faces once they returned from visiting with Ericka. In December 2006,

the twins had another overnight visit with Ericka. Ericka claimed that during this visit, Jakylah fell off the couch and hit her head but Ericka did not immediately seek medical attention for Jakylah. When Antoinette came to pick up Jakylah the next day, Ericka told Antoinette to take Jakylah to the hospital. Jakylah was then hospitalized with a skull fracture and bleeding on the brain. The Department of Children and Family Services (DCFS) became aware of the twins' case when a doctor called the DCFS child abuse and neglect hotline to report Jakylah's injuries.

¶ 4    DCFS then initiated a safety plan in which the five children were placed with another family friend. Andre stated that he could not take care of the children at that time because his apartment only had one bedroom and there was no one to watch the children while he worked. In January 2007, Ericka violated the safety plan by removing Camille, Celeste and Jaleel from the care of the family friend. All five children were then placed in protective custody.  On January 8, 2007, the State filed petitions for adjudication of wardship and motions for temporary custody of the five children, including the twins. At that time, Ericka identified the twins' father as Donnell Davis. Over the next few months, the five children were placed with various family friends and relatives in temporary custody. On March 11, 2007, Camille, Celeste, and Jaleel were placed with Andre's aunt. Jacorey remained with Pavielle and Jakylah remained with Antoinette.

¶ 5    On January 2, 2008, the trial court entered a permanency order for the twins with a goal of returning them home pending a status hearing. The court found that Ericka had not made substantial progress because she was not participating in the services required by DCFS, and Donnell Davis had not made substantial progress because he had not come forward for DCFS services. On April 30, 2008, a man named Donnell Davis appeared in the trial court and the court ordered him to take paternity tests as to the twins. The tests confirmed that he was not the twins' father and the court entered a finding of nonpaternity on June 20, 2008. On the same day, the court entered a default judgment against him for failing to appear. On May 23, 2008, while the twins' adjudication petition was pending, the State published a notice of the adjudication proceedings in the *Chicago Sun Times* because Donnell Davis had not yet appeared. Shortly thereafter, a different man named Donnell Davis was located at a Chicago address. After substitute service was obtained, the trial court entered a default judgment against him for failing to appear.

¶ 6    On December 18, 2008, the trial court held an adjudicatory hearing as to all six of Ericka's children. At that time, Andre had admitted to being the biological father of Celeste, Jaleel, and Andre S., but had not admitted to being the biological father of the twins.  The trial court found that the twins were neglected due to an injurious environment. The trial court also entered disposition orders that adjudicated the twins wards of the court. The trial court found Ericka unable to care for them, and "Donnell Davis, unknowns and AW/MC" unable and unwilling to care for them. At a permanency hearing on that same day, the trial court entered a goal of returning the twins home in 12 months. In May 2009, DCFS moved Jakylah to live with Jacorey in Pavielle's home.

¶ 7    On November 9, 2009, Andre requested a paternity test to determine if he was the twins' father. On February 25, 2010, the paternity test revealed that Andre was in fact the twins' father. On April 8, 2010, the trial court held a permanency hearing and again entered a goal

of returning the twins home in 12 months. The court found that Ericka had not made substantial progress toward returning the twins home, but that Andre had made substantial progress toward reunification and had been consistent with individual therapy services since July 2009. However, on July 1, 2010, the trial court held a permanency hearing and entered a goal of termination of parental rights. The trial court found that, although Ericka and Andre were now living together, neither parent had been consistent with reunification services required by DCFS regarding the twins.

¶ 8        On December 7, 2010, the State filed a supplemental petition for the appointment of a guardian with the right to consent to adoption. The petition included a request to terminate the parents' rights. The petition alleged that both parents were unfit for: failing to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare in violation of section 1(D)(b) of the Adoption Act and section 2-29 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-29 (West 2008)); and failing to make reasonable efforts to correct the conditions that were the basis for the removal of the children and/or failing to make reasonable progress toward the return of the children within nine months after the adjudication of neglect or abuse, or after an adjudication of dependency, and/or within any nine-month period after said finding, in violation of section 1(D)(m) of the Adoption Act and section 2-29 of the Juvenile Court Act.

¶ 9        On October 28, 2011, a hearing for termination of parental rights was held in the circuit court of Cook County. Ericka signed consents for the adoption of the twins and the court accepted the consents. The hearing proceeded only as to Andre. The trial court admitted into evidence various exhibits offered by the State. These exhibits included numerous DCFS service plans dating from 2007 to 2011, certified documents from the Children's Home and Aid (hereinafter, CHASI) agency including a mental health assessment, and CHASI court reports. Christina Gardner (Supervisor Gardner), former supervisor of the CHASI foster care program, testified for the State. Supervisor Gardner was the caseworker originally assigned to Andre and Ericka's family. CHASI assessed Andre and Ericka in June 2007. At that time, Donnell Davis was listed as the father of the twins, and Andre was assessed for services based on fathering Celeste and Jaleel. Supervisor Gardner stated that the services that were recommended for Andre as to Celeste and Jaleel were the same services he would have needed to complete for the twins.

¶ 10        Supervisor Gardner testified that when she met with Andre in June 2007, he said that he was not going to participate in any services because he had not done anything wrong. In February 2008, Andre completed a 15-hour parenting program without the knowledge of CHASI.[1] Andre was referred to domestic violence counseling in June 2009 as a result of an incident between Ericka and himself. He completed the counseling in March 2010. Also in June 2009, Andre and Ericka told CHASI that they were living together and intended to coparent their children. Andre began individual therapy in July 2009. Supervisor Gardner testified that numerous times between 2007 and 2010, Andre was told that if he was living

---

[1]CHASI had previously referred Andre and Ericka to this same parenting program, but they did not attend at the time they were referred and the referral was closed.

with Ericka, both he and Ericka would have to successfully complete reunification services if they wanted to parent together. CHASI's attempts to refer Andre and Ericka to couples counseling never materialized because neither Andre nor Ericka consistently attended individual therapy sessions. Although Andre attended some individual therapy sessions, he never completed the program. Likewise, couples counseling and family therapy were never completed. At various times, Andre was able to have unsupervised visits with Celeste, Camille, Jaleel and Andre S. Supervisor Gardner testified that Andre visited with Camille even though he was not her biological father, and Camille knew him as her father. However, visits were also "vacated and violated on more than one occasion."

¶ 11 Justin Brown (Caseworker Brown), Andre and Ericka's CHASI caseworker at the time of the termination hearing, also testified for the State. Caseworker Brown was assigned to Andre and Ericka's case in November 2009, shortly after Andre requested a paternity test to determine if he was the twins' father. Caseworker Brown stated that between November 2009 and the time of the termination hearing, Andre's attendance at individual therapy was never consistent. Caseworker Brown testified that in July 2009, Andre said he was willing to participate in the required services. CHASI then recommended couples therapy and family therapy. Those services were not completed because Andre made insufficient progress in individual therapy. In January 2010, Andre told Caseworker Brown that he was living with Ericka and planned to coparent with her. Also in January 2010, Andre left a voicemail message for Caseworker Brown saying that he would no longer participate in therapy. In February 2010, Andre asked if his individual therapy sessions could change from once a week to twice a month. CHASI agreed; however, Andre's attendance remained inconsistent and there was a month in the summer of 2010 in which Andre did not attend therapy at all. When Caseworker Brown asked Andre why he was not attending therapy, Andre said that he was not getting anything out of it. Caseworker Brown explained to both parents numerous times that they both had to make progress in the therapy and other services in order to be eligible for reunification with the twins.

¶ 12 In March 2010, after receiving the paternity results, Andre began having weekly supervised visits with the twins. Andre attended about half of the scheduled visits. Andre claimed he could not attend more visits because he was participating in a job training program. Caseworker Brown offered to schedule the visits around Andre's work schedule, but Andre never cooperated. In June 2010, CHASI held a family meeting in which both parents of the twins were invited, but Andre did not attend the meeting. In July 2010, the permanency goal changed to termination of parental rights and CHASI discontinued paying for Andre's therapy. After the permanency goal changed to termination of parental rights, Andre's visits with the twins changed to once a month. Caseworker Brown testified that over time, Andre was inconsistent with the monthly visits. Between July 2010 and the termination hearing, Andre was not involved in any services. Caseworker Brown testified that Ericka never made enough progress in individual therapy to warrant initiating family counseling.

¶ 13 The trial court held that Andre was an unfit parent pursuant to sections 1(D)(b) and 1(D)(m) of the Adoption Act. The trial court explicitly stated that its findings were not based on Andre's failure to ask for a paternity test earlier than November 2009. The trial court stated that even if a parent is noncustodial, the parent is still not relieved of the obligation

to participate in services related to the well-being of his children. The trial court recognized that Andre had participated in some services, having completed domestic violence counseling and a 15-hour parenting program. However, the court also noted that Andre never successfully completed individual therapy, was inconsistent in visiting the twins, and never completed couples therapy or family therapy. The court found that even if Andre was not living with Ericka, he still would have had to complete individual therapy in order to achieve reunification, yet he failed to complete this important service. The court heard the testimony regarding the frequent admonitions by CHASI and DCFS regarding the necessity for consistent participation in the required services. The trial court held that the State proved by clear and convincing evidence that Andre failed to maintain a reasonable degree of interest, concern or responsibility regarding the welfare of the twins. His lack of participation in services, his refusal to continue therapy and his failure to recognize the importance of services all played a role in the court's decision. The trial court held that based on the totality of the evidence and information available to the court, Andre failed to make reasonable efforts to correct the conditions that were the original bases for removal of the twins from the home. Further, he failed to make reasonable progress toward reunification with the twins during the three nine-month periods when he had an opportunity to do so.

¶ 14    During the best interests portion of the hearing, the trial court found that it was in Jacorey's and Jakylah's best interests to terminate Andre's parental rights. In terminating Andre's parental rights, the trial court noted that the twins were in a stable foster home where they were integrated into the extended family. The court noted that they maintained a relationship with Andre. The trial court appointed Ortega-Piron as guardian of the twins with the right to consent to adoption. Following the trial court's ruling, Andre filed this notice of appeal.

¶ 15                                                    ANALYSIS

¶ 16    Andre is appealing only the trial court's finding that he was unfit to have the children pursuant to sections 1(D)(b) and 1(D)(m) of the Adoption Act. Thus, the trial court's findings as to Jacorey's and Jakylah's best interests are not at issue and will not be addressed. We note that in addition to Andre and the State filing briefs in this appeal, the office of the public guardian (Public Guardian) also filed a brief on behalf of the twins. Because the State and the Public Guardian present many of the same arguments, we will mainly address the arguments presented by the State and will incorporate any additional arguments offered by the Public Guardian as appropriate.

¶ 17    We first examine the State's argument that Andre's brief should be stricken for multiple violations of Illinois Supreme Court Rule 341 (eff. July 1, 2008) and Illinois Supreme Court Rule 342 (eff. Jan. 1, 2005). If an appellant's brief violates the supreme court rules, this court has the authority to dismiss the appeal. *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42, 839 N.E.2d 532, 537 (2005). However, Supreme Court Rule 341 is an admonishment to the parties, not a limitation on the jurisdiction of the reviewing court, and the reviewing court has discretion in order to reach a just result. *Brown v. Brown*, 62 Ill. App. 3d 328, 332-33, 379 N.E.2d 634, 637 (1978).

¶ 18    The Public Guardian argues that Andre's brief is in violation of Rule 341(h)(6) and Rule 342(a) because the appendix of the brief does not contain any of the requirements set forth in those two rules. The Public Guardian also argues that Andre's brief violates Rule 341 because it is single spaced with incorrect margins, there is no certificate of compliance, and there is a systematic failure to accurately cite to the record. See Ill. S. Ct. R. 341(a), (c), (h)(6) (eff. July 1, 2008). We acknowledge that Andre's brief is in violation of Rule 341 and Rule 342 and could be stricken based on noncompliance. However, notwithstanding the deficiencies, Andre's arguments warrant discussion and resolution. Accordingly, while admonishing Andre regarding the importance of complying with the rules of the supreme court, we will address the merits of the appeal.

¶ 19    Next, Andre argues that the State failed to prove that he was unfit to have the children pursuant to section 1(D)(m) of the Adoption Act. The Juvenile Court Act provides a bifurcated system in which parental rights can be terminated. *In re Konstantinos H.*, 387 Ill. App. 3d 192, 203, 899 N.E.2d 549, 558 (2008); 705 ILCS 405/2-29(2) (West 2008). First, the State must show by clear and convincing evidence that the parent is unfit. *In re Konstantinos H.*, 387 Ill. App. 3d at 203, 899 N.E.2d at 558. "A finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act." *Id*. at 203-04, 899 N.E.2d at 558. Then, the State must show that the best interests of the children are served by severing the parental rights. *Id*. at 203, 899 N.E.2d at 558. The trial court's decision to terminate parental rights involves factual findings and credibility assessments that the trial court is in the best position to make. *Id*. Thus, the trial court's finding of unfitness will not be disturbed unless it is contrary to the manifest weight of the evidence and the record clearly shows that the opposite result was proper. *Id*. " 'Each case concerning parental unfitness is *sui generis*, requiring a close analysis of its individual facts; consequently, factual comparisons to other cases by reviewing courts are of little value.' " *Id*. (quoting *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064, 859 N.E.2d 123, 135 (2006)).

¶ 20    The Adoption Act states that a person shall be considered unfit to have a child under any of the grounds in section 1(D) including:

"(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act." 750 ILCS 50/1(D)(m) (West 2008).

Subsections (i) and (ii) are examined only under the first nine months after adjudication of neglect, and subsection (iii) is examined under any nine-month period following the end of the first nine months after the adjudication of neglect. *In re Tiffany M.*, 353 Ill. App. 3d 883, 890, 819 N.E.2d 813, 820 (2004).

¶ 21 Reasonable efforts and reasonable progress are separate and distinct grounds for finding a parent unfit under section 1(D)(m) of the Adoption Act. *In re Daphnie E.*, 368 Ill. App. 3d at 1066, 859 N.E.2d at 137. Reasonable efforts are judged by a subjective standard based upon the amount of effort that is reasonable for a particular person. *Id*. at 1066-67, 859 N.E.2d at 137. "[R]easonable progress is judged by an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent." *Id*. at 1067, 859 N.E.2d at 137. Reasonable progress requires, at minimum, measurable or demonstrable movement toward the goal of reunification. *Id*. The standard for measuring a parent's progress is to consider the parent's compliance with the service plans and the court's directives in light of the conditions that led to the child's removal, and subsequent conditions that would prevent the court from returning custody of the child to the parent. *Id*. "Reasonable progress exists when the trial court can conclude that it will be able to order the child returned to parental custody in the near future." *Id*.

¶ 22 Andre argues that he exceeded the standards that define a fit parent because of his ability to take care of the twins' other four siblings. Andre claims that for years he had unsupervised visits with the four other children and took care of them responsibly to the point where Camille referred to him as her father despite the fact that he was not her biological father. Andre states that the twins also came along for the unsupervised visits with their siblings, even before Andre requested a paternity test. Andre also points out that he completed a 15-hour parenting program and completed a course on domestic violence. He argues that he clearly made progress because he was rated as satisfactory in the service plan in January 2010. He also claims that he could not make progress during the first nine months after adjudication because it was not yet determined that he was the father of the twins. Andre argues that DCFS expected him to continue completing services in perpetuity because the services he was required to complete for the twins were the same services he was required to complete for the twins' siblings. Andre claims that this shows that the State did not prove by clear and convincing evidence that he was an unfit parent under section 1(D)(m) of the Adoption Act.

¶ 23 In response, the State argues that Andre did not make reasonable efforts to correct the conditions that caused the twins' removal. The Public Guardian points out that the first nine-month period after the twins were adjudicated wards of the court ran from December 2008 to September 2009. Andre began participation in individual therapy services in July 2009. The Public Guardian argues that two months of participating in services in comparison to seven months of nonparticipation is not a reasonable effort. The State also argues that Andre failed to make reasonable progress during any of the three nine-month periods after adjudication. The State points out that although Andre was attending individual therapy sessions for a short period of time, he never completed individual therapy, couples therapy, or family counseling. Moreover, Andre never progressed far enough to earn unsupervised visits with the twins. Andre only attended 50% of the scheduled weekly visits with the twins and was likewise inconsistent with scheduled monthly visits. Thus, the State claims that Andre did not make reasonable progress at any time before the termination hearing.

¶ 24 In addition, the Public Guardian argues that reasonable efforts and reasonable progress are separate grounds, and only one ground of unfitness needs to be proved in order to find

a parent unfit. *In re R.L.*, 352 Ill. App. 3d 985, 998, 817 N.E.2d 954, 966 (2004). The Public Guardian points out that this court can affirm the trial court's ruling based on Andre's lack of reasonable efforts or reasonable progress in the first nine-month period after adjudication, *or* Andre's lack of reasonable progress in the second or third nine-month period after adjudication. The three nine-month periods that followed adjudication as to the twins were: December 2008 to September 2009; September 2009 to June 2010; and June 2010 to March 2011. As previously discussed, the Public Guardian points out that Andre did not make reasonable efforts or progress during the first nine-month period and only participated in therapy during the final two months of that period. The Public Guardian also argues that Andre failed to make reasonable progress during the second and third nine-month periods. In January 2010, Andre stated that he no longer wanted to participate in therapy, and in February 2010 he reduced his therapy to twice a month instead of weekly. In June 2010, Andre stopped participating in therapy altogether. Therefore, Andre engaged in no services at all during the third nine-month period. Moreover, Andre continued to live with Ericka during the second and third nine-month periods while she also made no progress. Andre was told by the caseworkers on numerous occasions that if he chose to live with Ericka, both parents would have to make progress in order to achieve reunification with the twins. Therefore, the State argues that Andre failed to make reasonable efforts or reasonable progress at any time.

¶ 25    We agree with the arguments presented by the State and the Public Guardian. Andre participated in individual therapy services from July 2009 through March 2010, completed a domestic violence program, and completed a 15-hour parenting program in February 2008. Andre's completion of the parenting program was done outside of a referral from DCFS, and took place before the twins were adjudicated wards of the court and thus before any of the three nine-month periods began to run. Andre's participation in individual therapy began toward the very end of the first nine-month period, and ended before the second nine-month period was over. Andre engaged in no services at all during the third nine-month period. Moreover, throughout all three of the nine-month periods, Andre was inconsistent with his visits with the twins. We cannot say that the trial court erred in finding that Andre failed to show reasonable efforts or reasonable progress in any of the three nine-month periods. The standard for measuring reasonable progress is to consider the parent's compliance with the service plans and whether the court can conclude that the children can be returned home in the near future. At no point during any of the three nine-month periods was Andre close to reunification with the twins. At the very least, under the facts of this case, Andre would have had to *complete* individual therapy and live apart from Ericka in order to achieve reunification. He clearly fell short of these requirements.

¶ 26    Andre argues that the trial court unfairly penalized him for lack of effort and progress during the first nine-month period because he was unaware that he was the father of the twins until February 25, 2010. In response, the Public Guardian cites *In re B.W.*, 309 Ill. App. 3d 493, 721 N.E.2d 1202 (1999). In that case, a father challenged the trial court's termination of his parental rights, arguing that he was unaware of the child's birth due to his incarceration and therefore was unable to show reasonable progress. *In re B.W.* at 499, 721 N.E.2d at 1207. The appellate court found that an objective standard is used when determining whether

reasonable progress has occurred, and reasonable progress may be found when the trial court can conclude that the parent's progress is sufficiently demonstrable showing that the child can be returned to the parent in the near future. *Id*. The appellate court held that the father was responsible for his lack of knowledge of the child's birth because he removed himself from the community due to criminal behavior and failed to make any progress after he became aware of the child's existence. *Id*. at 500, 721 N.E.2d at 1208. Thus, the appellate court held that the trial court's finding of unfitness was not against the manifest weight of the evidence. *Id*.

¶ 27    We agree with the Public Guardian's argument and the reasoning of the appellate court in *In re B.W.* Under an objective examination, it is clear that Andre did not make reasonable progress toward reunification with the twins during the first nine-month period after adjudication. The fact that he was unaware that he was the twins' father does not excuse his lack of progress. He was aware of the milieu in which the twins lived and was an active participant. Further, the knowledge or circumstances that propelled him to request a paternity test could have been utilized sooner. It was entirely up to him. Moreover, the trial court did not err in finding that Andre failed to show reasonable progress during the second or third nine-month period after he knew he was the twins' father. Accordingly, the trial court's finding of unfitness during either the second or third nine-month period is sufficient for this court to affirm the trial court's ruling. Accordingly, we affirm the trial court's ruling that Andre was an unfit parent pursuant to section 1(D)(m) of the Adoption Act.

¶ 28    Andre next argues that the State failed to prove that he was an unfit parent pursuant to section 1(D)(b) of the Adoption Act. The Adoption Act says that the court may find a person unfit to have a child because of "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2008). This section of the Adoption Act is disjunctive and failure to show any one of the three elements (interest, concern, or responsibility) may be considered on its own as a basis for unfitness. *In re C.E.*, 406 Ill. App. 3d 97, 108, 940 N.E.2d 125, 136 (2010). In examining the three elements, the court is to consider a parent's efforts to visit and maintain contact with the children and inquiries into the children's welfare, as well as other indications of interest. *Id*. The court must also examine the parent's conduct in the context of the parent's circumstances. *Id*. "Relevant circumstances include, for example, difficulty in obtaining transportation, the parent's [economic status], statements made by others to discourage visitation, and whether the parent's lack of contact with the children can be attributed to a need to cope with personal problems rather than indifference ***." *Id*. at 109, 940 N.E.2d at 136.

¶ 29    The only argument that Andre makes to challenge the trial court's ruling as to section 1(D)(b) of the Adoption Act is that the State failed to prove that he did not maintain reasonable interest, concern or responsibility because DCFS did not offer any services to Andre after the permanency goal was changed to termination of parental rights. We note that this contention was made without any statutory citation, case law citation, or citation to the record. The State argues that there are numerous instances where Andre failed to show interest in the twins. The State points out that Andre did not begin individual therapy services until July 2009, reduced the frequency of his therapy from weekly to twice per month, and then ended therapy entirely before completion. The State argues that the domestic violence

counseling was the only recommended service that Andre completed. Moreover, Andre was inconsistent in visiting the twins. Caseworker Brown testified that Andre only attended 50% of the scheduled weekly visits with the twins. The same was true of his scheduled monthly visits. He did not avail himself of DCFS's willingness to accommodate his work schedule to facilitate weekly visits.

¶ 30    Andre argues on appeal that he has shown that he can care for the twins because he completed a parenting class, domestic violence counseling, parented one of Ericka's children who was not his biological child, and kept the four other children physically and emotionally safe during unsupervised visits. The State points out that the parenting class that Andre completed was independent of the services provided by DCFS. Also, the State points out that Andre's references to the twins' siblings are irrelevant to this case. The Public Guardian argues that Andre showed a lack of interest or concern in the twins' welfare by choosing to stay with Ericka after being told repeatedly that his opportunity for reunification was tied to both parents' progress, so long as they lived together. Ericka was not making progress, yet Andre continued living with her.

¶ 31    When we consider the totality of the evidence, we cannot say that the trial court's ruling as to section 1(D)(b) was against the manifest weight of the evidence. A reasonable person with similar circumstances to Andre who was interested in reunification with his children would have diligently and enthusiastically involved himself with visiting his children and participating in the services provided for the benefit of the family. The fact that Andre did not even complete individual therapy, the minimum requirement in the process toward reunification, clearly shows that Andre failed to maintain a reasonable degree of interest, concern, or responsibility in the welfare of the twins. The fact that Andre failed to complete the services or show a continued interest and participation in the prescribed services cannot be overcome. We hold that the trial court's ruling was not against the manifest weight of the evidence and will not be overturned. Therefore, we affirm the trial court's ruling that Andre is an unfit parent pursuant to section 1(D)(b) of the Adoption Act.

¶ 32    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 33    Affirmed.