NOTICE

Decision filed 05/06/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 200001-U

NO. 5-20-0001

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* J.J.O., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Marion County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 18-JA-46 |
| | ) | |
| v. | ) | |
| | ) | |
| Jazmin A., | ) | Honorable |
| | ) | Ericka A. Sanders, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Welch and Justice Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's determinations that Mother was unfit and that termination of parental rights was in the minor's best interests were not contrary to the manifest weight of the evidence.

¶ 2     Respondent, Jazmin A. (Mother), appeals the judgment of the circuit court of Marion County terminating her parental rights to her minor child, J.J.O. For the following reasons, we affirm.

¶ 3     J.J.O., born on March 10, 2015, and K.T.O., born on May 4, 2016, are the biological children of Mother. The biological father of the children is unknown. On November 29,

1

2017, Mother left J.J.O. and K.T.O., who were two years old and one year old respectively, in the care of A.C., a six-year-old. The record indicates the children were left alone for several hours. As night began to fall, A.C. became scared because it was dark and there were no lights on in the house. A.C. went outside, where she saw a man, subsequently identified as Robert Dillon, searching for something. After about 25 to 30 minutes, A.C. approached Dillon and asked to use his phone to call a teacher for help. A.C. called Kenya Stacey, A.C.'s former kindergarten teacher. A.C. told Stacey that A.C. was alone with two small children, in the dark. Stacey responded to the home where A.C. was babysitting.

¶ 4     The next day, November 30, 2017, the Centralia Police Department received a report that J.J.O. and K.T.O. were not being properly supervised while in Mother's care. For several months after the incident, the Illinois Department of Children and Family Services (DCFS) attempted periodic checks on the children, but was unable to locate them. On April 25, 2018, after Mother was arrested and detained for armed robbery, DCFS located the children and took them into protective custody.

¶ 5     On April 26, 2018, the State filed a petition for adjudication of wardship for J.J.O., alleging she was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3 (West 2018)) because (1) her environment was injurious to her welfare, in that Mother left J.J.O. in the care of a small child for several hours, and (2) Mother had several contacts with law enforcement during the previous five months and was incarcerated at the Marion County jail. A shelter care hearing was held the next day. Following the hearing, the trial court found there was probable cause to believe J.J.O. was

2

neglected, as defined by the Act, because her environment was injurious to her welfare. J.J.O. was removed from Mother's custody, and temporary custody was given to DCFS.

¶ 6 On September 19, 2018, the court adjudicated J.J.O. neglected, finding her environment was injurious to her welfare as defined by 705 ILCS 405/2-3(1)(b), based on Mother leaving J.J.O. for several hours without adult supervision. On October 10, 2018, the court made J.J.O. a ward of the court.

¶ 7 On August 14, 2019, the State filed an amended petition to terminate Mother's parental rights to J.J.O. The State alleged that Mother was unfit because (1) she failed to protect J.J.O. from an environment injurious to her welfare (750 ILCS 50/1(D)(g) (West 2018); (2) she failed to make reasonable efforts to correct the conditions that were the basis for the removal of J.J.O. from Mother's care during the nine-month period following the adjudication of neglect, specifically between September 20, 2018, and June 20, 2019 (750 ILCS 50/1(D)(m)(i) (West 2018)); and (3) she failed to make reasonable progress toward the return of J.J.O. in the nine-month period following the adjudication of neglect, specifically between September 20, 2018, and June 20, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)).

¶ 8 On November 4, 2019, the court held a fitness hearing, and found by clear and convincing evidence that Mother was an unfit person for failing to make reasonable progress toward the return of J.J.O. in the nine-month period following the adjudication of neglect, between September 20, 2018, and June 29, 2019 (750 ILCS 50/1(D)(m)(ii)). On December 2, 2019, the court conducted the best interest hearing, after which the court

entered an order finding that it was in J.J.O.'s best interests that Mother's parental rights be terminated.

¶ 9    On appeal, Mother argues the trial court's determinations that she was unfit and that the termination of her parental rights was in the best interests of J.J.O. were against the manifest weight of the evidence. We disagree.

¶ 10    Section 2-29 of the Act sets forth a two-step process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2018). First, the State must prove by clear and convincing evidence that the parent is an unfit person as defined by the Adoption Act (750 ILCS 50/1(D) (West 2018)). *In re J.L.*, 236 Ill. 2d 329, 337 (2010). If the trial court finds the parent to be unfit, the court must then determine whether the State has proven, by a preponderance of the evidence, that it is in the child's best interest that parental rights be terminated. 705 ILCS 405/2-29(2) (West 2018); *In re D.T.*, 212 Ill. 2d 347, 367 (2004). During the second stage of the proceedings, the focus of the court's scrutiny shifts from the rights of the parents to the best interests of the child. *In re B.B.*, 386 Ill. App. 3d 686, 697 (2008).

¶ 11    The trial court's decision to terminate parental rights involves factual findings and credibility assessments which, on review, are accorded great deference. *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000). On appeal, the trial court's findings of parental unfitness and that termination of parental rights was in the child's best interests will not be disturbed unless they are contrary to the manifest weight of the evidence. *In re R.L.*, 352 Ill. App. 3d 985, 998, 1001 (2004).

¶ 12                    Determination of Unfitness

¶ 13    Here, the trial court concluded that the State had successfully proven one ground of unfitness against Mother, that Mother had failed to make reasonable progress toward the return of J.J.O. in the nine-month period following the adjudication of neglect, between September 20, 2018, and June 20, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)). "Reasonable progress" is an objective standard, and is based upon the amount of progress, as measured from the conditions existing at the time of removal. *In re Jacorey*, 2012 IL App (1st) 113427, ¶ 21. Reasonable progress requires a measurable or demonstrable movement toward the goal of reunification. *In re Jacorey*, 2012 IL App (1st) 113427, ¶ 21. A parent has made "reasonable progress" when the trial court can conclude that it will be able to return the child to parental custody in the near future. *In re Jacorey*, 2012 IL App (1st) 113427, ¶ 21. If a service plan has been established to correct the conditions that were the basis for the removal of the child from the parent, a "failure to make reasonable progress" includes a parent's failure to substantially fulfill his obligations under the service plan. 750 ILCS 50/1(D)(m) (West 2018)).

¶ 14    In this case, the condition that was the basis for the removal of J.J.O. from the home was that J.J.O. was in an environment that was injurious to her welfare. This finding was based on Mother's failure to provided J.J.O. with adequate supervision because Mother left J.J.O., a two-year-old, in the care of a six-year-old for an extended period of time. Mother's first service plan was created in July 2018, several months after J.J.O. went into the care of DCFS. Mother's service plan was revisited in September 2018 and April 2019. Each of Mother's service plans included the same tasks: (1) complete a mental health assessment

5

and follow any recommendations, (2) attend grief counseling to help her deal with the death of a child,[1] (3) obtain appropriate housing, (4) maintain lawful employment, (5) complete a substance abuse assessment and follow any recommendations made as a consequence of attending the assessment, and (6) attend and successfully complete a parenting class.

¶ 15    The evidence in the record demonstrates that Mother failed to successfully complete any of the six goals in her service plan. Although Mother obtained a mental health assessment, she did not follow through with the recommendations made from the assessment by attending counseling sessions. Throughout the course of the case, Mother was homeless, frequently moving from place to place. The DCFS caseworker testified at the fitness hearing that throughout the case, she rarely knew of Mother's whereabouts or contact information, and that Mother had failed to maintain consistent contact with the caseworker. Mother's service plans required her to maintain lawful employment, yet Mother was only sporadically employed, and never provided the caseworker with any paystubs. While Mother attended some parenting classes in early 2019, she was dropped from the program after missing multiple sessions. The caseworker testified she did not know if Mother had maintained a sober lifestyle because Mother never completed a substance abuse assessment, and never submitted to any random drug tests. All of the evidence in the record demonstrates that Mother failed to make any measurable movement toward reunification. Based upon the evidence presented, the trial court's finding that Mother was unfit for failing to make reasonable progress toward the return of J.J.O. during

---

[1]In August 2017, Mother lost an infant in an accidental, sleep-related "rollover" incident.

the nine-month period following the adjudication of neglect was not against the manifest weight of the evidence.

¶ 16                    Determination of J.J.O.'s Best Interests

¶ 17    Once a parent has been found to be unfit, the parent's rights yield to the child's best interest. *In re Tashika F.*, 333 Ill. App. 3d 165, 170 (2002). Again, this court will not reverse the trial court's determination as to the child's best interests unless it is contrary to the manifest weight of the evidence. *In re R.L.*, 352 Ill. App. 3d at 1001.

¶ 18    The record clearly reveals Mother's lack of progress to complete the objectives of her service plan. While Mother exercised her visitation with J.J.O., Mother was not always consistent, occasionally going through periods where she missed several of her scheduled visits. By contrast, J.J.O.'s needs are being met in her foster home, where she has been placed with her brother, K.T.O., for over a year. J.J.O. is integrated into her foster family, has adjusted to preschool, and her behavioral issues have improved. J.J.O. is bonded to her foster mother, and her foster mother wishes to adopt both J.J.O. and K.T.O. Based on the circumstances presented, the trial court's determination that termination of Mother's parental rights was in the best interests of J.J.O. was not contrary to the manifest weight of the evidence.

¶ 19                    CONCLUSION

¶ 20    For the foregoing reasons, we affirm the judgment of the circuit court of Marion County.

¶ 21    Affirmed.