2022 IL App (2d) 210219-U
No. 2-21-0219
Order filed January 10, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* A.W., a Minor, | ) | Appeal from the Circuit Court of |
| | ) | Winnebago County. |
| | ) | |
| | ) | No. 19-JA-471 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Darnell W., | ) | Francis M. Martinez, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Bridges and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's finding that respondent father was unfit was not against the manifest weight of the evidence. Affirmed.

¶ 2    Respondent, Darnell W., appeals from the trial court's order finding that he was an unfit parent and that it was in the best interests of his minor child, A.W., that respondent's parental rights be terminated. Initially, appointed appellate counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re Alexa J.*, 345 Ill. App. 3d 985 (2003), stating that she reviewed the record, determined that there were no meritorious issues that could be raised on appeal, and served respondent with a copy of the motion. The notice of appeal was filed on April 23, 2021, and counsel filed the motion to withdraw on June 18, 2021. We denied the motion

without prejudice on September 15, 2021, and counsel subsequently submitted a brief raising three claims of error on October 8, 2021. Accordingly, there is good cause for issuing our decision beyond 150 days after the notice of appeal was filed. See Ill. S. Ct. R 311(a)(5) (eff. July 1, 2018). For the following reasons, we affirm.

¶ 3                                              I. BACKGROUND

¶ 4     Respondent's daughter, A.W., was born in October 2019. The State filed a neglect petition on October 30, 2019, alleging that A.W. was born with cocaine, or a metabolite of cocaine, in her blood, urine, or meconium. Respondent and A.W.'s mother appeared in the trial court on October 31, 2019, and waived their rights to a shelter care hearing.[1] The trial court adjudicated A.W. to be a neglected child, placed her in the temporary custody of the Department of Children and Family Services (DCFS), and ordered the parents to complete various services per a stipulated agreement.

¶ 5     Respondent and A.W.'s mother had two other children together. Respondent's parental rights with respect to those children had previously been terminated, and the children had been placed with a foster parent, who subsequently adopted them. A.W. was also placed with the same foster parent. Respondent was on probation at the time the petition was filed. He had been diagnosed with schizophrenia and was receiving treatment.

¶ 6     In January 2020, the trial court held its first permanency-review hearing. Respondent and A.W.'s mother stipulated that they were either unfit, unable for reasons other than financial, or unwilling to care for A.W. and agreed to DCFS guardianship of A.W. The court placed A.W. in short-term care with a goal to return home. See 705 ILCS 405/2-28(2)(B) (West 2020).

---

[1] The parental rights of A.W.'s biological mother were also terminated but are not at issue in this appeal.

¶ 7 At a July 9, 2020, permanency-review hearing, the trial court determined that respondent had made reasonable efforts during the review period. The next permanency-review hearing was scheduled for December 8, 2020, but was continued until January 4, 2021. Following the hearing, the court concluded that it was appropriate to change the goal to substitute care pending termination of parental rights. See *id.* § 2-28(2)(C).

¶ 8 On February 9, 2021, the State filed a petition to terminate respondent's parental rights. The petition alleged that respondent had (1) "failed to maintain a reasonable degree of interest, concern or responsibility as to [A.W.'s] welfare" (750 ILCS 50/l(D)(b) (West 2020)) (count I); (2) "failed to protect [A.W.] from conditions within the environment injurious to [her] welfare" (*id.* § l(D)(g)) (count II); (3) "failed to make reasonable efforts to correct the conditions that caused [A.W.] to be removed during" the period of April 5, 2020, to January 4, 2021 (count III) (*id.* § 1(D)(m)(i)); and (4) "failed to make reasonable progress toward the return of [A.W.] to him during" either (a) the period of January 10, 2020, to October 10, 2020, or (b) the period of April 5, 2020, to January 4, 2021 (*id.* § l(D)(m)(ii)) (count IV).

¶ 9 On March 8, 2021, the trial court conducted a termination of parental rights fitness hearing. Two witnesses testified: Krista Vaccarello and respondent.

¶ 10 Vacarello had been A.W.'s DCFS caseworker since June 2020. She testified that, after A.W. was removed from her parents' care, DCFS conducted an integrated assessment and generated a service plan, which was periodically reviewed. The State introduced into evidence the integrated assessment report as well as service plans dated December 2019, February 2020, and August 2020.

¶ 11 As part of the service plan, respondent was required to complete the partner abuse intervention program (PAIP), engage in mental health services, undergo a substance abuse

assessment and engage in substance abuse services, and demonstrate satisfactory cooperation and parenting. Although respondent had enrolled in PAIP twice, he had not completed it and provided no explanation. Respondent had been diagnosed with schizophrenia and was fully compliant with his mental health services and his medication schedule.

¶ 12    It was recommended that respondent attend alcoholics anonymous (A.A.) and narcotics anonymous (N.A.). Although respondent had told her he had attended meetings, he provided no proof of attendance and Vaccarello had not received any supporting documentation. She was concerned about respondent's ability to remain sober. Respondent had continued to live with A.W.'s mother during the service plan period even though she was still actively using drugs. Respondent missed drug screenings in September and October 2020. On cross-examination, Vaccarello explained that respondent was drug-tested at least monthly and agreed that, although he missed some drops, most of his drops were negative. Moreover, Vaccarello had previously reported to the court that respondent's probation officer told her that defendant tested positive for alcohol in September and October 2020.

¶ 13    Vaccarello was aware of an incident in which police were called to respondent's home. She believed police had been told that respondent threatened to kill A.W.'s mother.

¶ 14    Respondent was consistent in his visits with A.W., missing only when A.W. was sick. However, Vaccarello denied that respondent had "provided any form of support or clothing or food" or "inquired about the safety or health or welfare" of A.W. She had concerns about respondent's mental health, the possibility of his continued drug use, and his ability to safely parent.

¶ 15    Respondent testified that he was enrolled in domestic violence classes in January 2021. He attended one session but was discharged. He thought someone would notify him of the next

scheduled session but was never contacted. Respondent did not know that "they don't contact people." Respondent further testified that, during his visits with A.W., respondent attempted to bring clothes and other items but DCFS did not let him.

¶ 16    From April 2020 until the date of his testimony, respondent attended A.A. and N.A. meetings "every day" except Fridays, missing only a few meetings due to, for example, doctor's appointments. He did not have a sponsor. He never documented his attendance, although he verbally told his caseworker he had been attending. He completed his steps and had been "upgrade[d]" to another part of the substance abuse counseling program. When asked why he had not told his caseworker about his A.A. and N.A. attendance, respondent stated, "I've been getting different case managers, stuff like that, and lost numbers, different phone stuff, you know. Just wasn't going right. So I couldn't report at that time." When asked if he had any evidence of his attendance, respondent replied "I left them at home." He also described the format of meetings and explained that A.A. participants recite a "serenity prayer" after every meeting, but he did not know the prayer.

¶ 17    Respondent testified that he had not used marijuana since 2016. He stated, "I don't do drugs, but I was playing around with some fentanyl" and admitted to snorting fentanyl in "2019 or 2018."

¶ 18    In December 2020, respondent moved out of the residence he shared with A.W.'s mother and into his sister's house. Regarding the incident involving police, respondent denied that he threatened A.W.'s mother and explained that police found ammunition that belonged to his stepbrother.

¶ 19    On April 19, 2021, the trial court found respondent unfit (under counts I, III, and IV) by clear and convincing evidence and that termination of respondent's parental rights would be in A.W.'s best interest. Regarding the unfitness finding, the trial court noted the following:

"Father's services were as follows: Mental health services, substance abuse assessment and treatment, parenting, domestic violence services, and parent coaching I believe was the final service. He did not engage in PAIP, according to testimony, attempted but missed dates.

Per the Family Service Plan, State's Exhibit No. 4, he did not complete the DV services because he did not complete substance abuse and did not demonstrate sobriety.

The delay in substance abuse treatment caused a delay in parenting. The cumulative effect of these delays or incomplete services resulted in a failure to make efforts or progress.

Therefore, the State has proven 1, 3 and 4, Counts 1, 3 and 4, by clear and convincing evidence."

Respondent timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    Respondent argues that the trial court erred in finding him unfit on each of its three grounds—that he failed to maintain a reasonable degree of interest, concern or responsibility for A.W.'s welfare; to make reasonable efforts to correct the conditions that led to A.W.'s removal; and to make reasonable progress toward A.W.'s return.

¶ 22    Every case involving a finding that a parent is unfit is *sui generis*. *In re Adoption of Syck*, 138 Ill. 2d 255, 278 (1990). A parent may be found unfit on the ground that he or she has "fail[ed] to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare."

750 ILCS 50/1(D)(b) (West 2020). If a child has been adjudicated a neglected minor, a parent may be found unfit if, during any nine-month period following such adjudication, he or she failed "to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent" or "to make reasonable progress toward the return of the child to the parent." *Id.* § 1(D)(m)(i), (ii) (West 2020). Whether a parent has made "reasonable efforts" is judged subjectively; whether a parent has made "reasonable progress" is judged objectively and requires "measurable or demonstrable movement toward the goal of reunification." *In re Jacorey*, 2012 IL App (1st) 113427, ¶ 21. The "benchmark" for determining whether a parent has made reasonable progress toward the return of the child "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child" and "other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d at 216–17; see also 750 ILCS 50/1(D)(m) (West 2020) (" '[F]ailure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan[.]"). A finding that any of the three above grounds is satisfied can support a finding of unfitness. See 750 ILCS 50/1(D) (West 2020) ("The grounds of unfitness are any one or more of the following***."). We choose to focus on the third ground relied on by the trial court— whether respondent demonstrated reasonable progress—although we would reach the same result under all three grounds.

¶ 23    A trial court's finding of unfitness will be reversed only if it is against the manifest weight of the evidence. *In re Adoption of L.T.M.*, 214 Ill. 2d 60, 68 (2005). We defer to the findings of the trial court because it is in the best position to observe and assess the credibility of witnesses. *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). A finding is against the manifest weight of the evidence if is

unreasonable, arbitrary, or not based on the evidence presented. *Id.* at 498.

¶ 24    The trial court found that there was a delay in respondent's substance abuse treatment, which caused a delay in parenting. According to the court, "The cumulative effect of these delays or incomplete services resulted in a failure to make efforts or progress." Thus, the court found defendant unfit, and this finding is not against the manifest weight of the evidence.

¶ 25    Respondent challenges the unfitness finding on grounds that: (1) he maintained regular visits with A.W., (2) he consistently engaged in mental health treatment and complied with his medication regimen, (3) he consistently attended A.A. and N.A. meetings, (4) most of his drug tests were negative, (5) he completed a PAIP assessment and was ready to begin domestic violence counseling, and (6) as of December 2020 he was no longer living with A.W.'s mother. However, several facts adduced at the fitness hearing weighed in favor of a finding that respondent failed to make reasonable progress: (1) respondent submitted no documentation of his A.A. or N.A. meeting attendance; (2) he was unable to recite the A.A. serenity prayer despite testifying that he attended meetings regularly; (3) he missed several drug screenings and, according to his probation officer, tested positive twice for alcohol; (4) he had not meaningfully engaged in domestic violence services during the year prior to the hearing; and (5) he continued to live with A.W.'s mother until December 2020 despite her continued drug use. Respondent's conduct during the period of substitute care, and his failure to fulfill conditions of his service plan, bear directly on the reasonableness of his efforts and progress toward A.W.'s return and on the extent of respondent's interest, concern, or responsibility for A.W.'s welfare. Under these circumstances, based on the evidence presented, the finding of respondent's unfitness was not against the manifest weight of the evidence.

¶ 26    Respondent also argues that the trial court's finding that he failed to make reasonable efforts to cure the conditions that caused A.W. to be removed was not based on the evidence. The court found at a July 9, 2020, permanency review hearing that defendant had, at that time, demonstrated reasonable efforts. Respondent contends that the court was thus *required* to find that the State failed to satisfy its burden for count III, but provides no authority for this contention. This argument has no merit. The time period specified by the State for count III included the six months following the July 9, 2020, hearing. Even if defendant's efforts were satisfactory before that date, the trial court was not prohibited from making a contrary finding after considering additional evidence. Regardless, we reiterate that any of the three findings of unfitness was sufficient and we would reach the same outcome considering any ground.

¶ 27                                   III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 29    Affirmed.