NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190821-U

NO. 4-19-0821

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 15, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.F., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County |
| Petitioner-Appellee, | ) | No. 16JA125 |
| v. | ) | |
| Darelle F., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding the trial court did not err in terminating respondent's parental rights.

¶ 2    In September 2016, the State filed a petition for adjudication of neglect or abuse with respect to L.F., the minor child of respondent, Darelle F. In January 2017, the trial court adjudicated the minor neglected, made her a ward of the court, and placed custody and guardianship with the Department of Children and Family Services (DCFS). The State filed a motion to terminate respondent's parental rights in June 2019. Following a hearing on the State's motion in October 2019, the court found respondent an "unfit person" within the meaning of section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). The court then held a best-interests hearing in November 2019, where the court found it was in the minor's best interests to terminate respondent's parental rights.

¶ 3    On appeal, respondent argues the trial court erred in terminating his parental

rights; specifically, he alleges the trial court's unfitness findings and best-interest determination stand against the manifest weight of the evidence. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On September 1, 2016, the State filed a petition for adjudication of neglect with respect to L.F.—a minor child born August 27, 2016—alleging the newborn child and her mother tested positive for cocaine metabolites. The State's petition further alleged respondent (Darelle F.) to be L.F.'s father. The next day, after a shelter care hearing, the trial court issued two orders, one requiring genetic testing and the second, pursuant to the stipulation of neglect and immediate and urgent necessity by the parents, placing temporary custody and guardianship of L.F. with DCFS.

¶ 6        In November 2016, DCFS established a caregiver service plan for Darelle F., setting the following goals: comply with all conditions of parole; participate in random drug screens as they are requested by Webster-Cantrell Hall; maintain sobriety throughout the life of this case; complete a substance abuse assessment; complete parenting assessment/classes; participate in a domestic violence perpetrator assessment and any treatment that is recommended; participate in genetic testing to establish paternity of L.F.; and participate in visitation with L.F.

¶ 7                            A. Adjudicatory Proceedings.

¶ 8        After genetic testing confirmed Darelle F. was L.F.'s father, the trial court issued a judgment of parentage stating the same. On January 26, 2017, the trial court issued an adjudicatory order, finding: "The minor is abused, neglected as defined by 705 ILCS 405/2-3 in that the minor as a newborn was exposed to illicit drugs as defined by 705 ILCS 405/2-3(1)(c)." The court specifically noted L.F. tested positive for cocaine at birth and the mother admitted

substance abuse throughout the pregnancy. The court then found the parents (specifically the mother) inflicted the abuse or neglect. As to the father, the court determined the State proved its allegations of abuse or neglect by a preponderance of the evidence. The father had previously waived his presence for the adjudication, had no objection to a stipulation there was sufficient evidence of neglect, and had no objection to the minor being made a ward of the court.

¶ 9        The trial court also issued a dispositional order on January 26, 2017, finding Darelle F. unfit and unable to care for, protect, train, educate, supervise, or discipline L.F., and determining placement with him is contrary to L.F.'s health, safety and best interest because of his substance abuse and noninvolvement. The court granted the State's petition, adjudicated L.F. neglected, and made her a ward of the court. The court ordered DCFS to maintain custody and guardianship over L.F.

¶ 10                    B. Termination of Respondent's Parental Rights

¶ 11        On June 25, 2019, the State filed a motion seeking a finding of unfitness and termination of parental rights of Darelle F. The State alleged Darelle F. was an unfit person pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). The State's petition identified eight counts as to Darelle F.: (1) Darelle F. has failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) Darelle F. has failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor from the parent during any nine-month period following the adjudication of neglect (750 ILCS 50/1(D)(m)(i) (West 2018)); (3) Darelle F. has failed to make reasonable progress toward the return of the minor to the parent during any nine-month period following adjudication of neglect, specifically the nine-month period between January 26, 2017, to October 26, 2017 (750 ILCS 50/1(D)(m)(ii) (West 2018)); (4) Darelle F.

has failed to make reasonable progress toward the return of the minor to the parent during any nine-month period following adjudication of neglect, specifically the nine-month period between October 26, 2017, to July 16, 2018 (750 ILCS 50/1(D)(m)(ii) (West 2018)); (5) Darelle F. has failed to make reasonable progress toward the return of the minor to the parent during any nine-month period following adjudication of neglect, specifically the nine-month period between July 26, 2018, to April 26, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)); (6) Darelle F. has failed to make reasonable progress toward the return of the minor to the parent during any nine-month period following adjudication of neglect, specifically the nine-month period between September 21, 2018, to June 21, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)); (7) the minor is in the temporary custody or guardianship of DCFS, the parent, Darelle F., is incarcerated as a result of criminal conviction at the time the motion for termination of parental rights is filed, prior to incarceration, Darelle F. had little or no contact with the minor, and Darelle F.'s incarceration will prevent him from discharging his parental responsibilities for the minor of a period in excess of two years after the filing of the motion for termination of parental rights (750 ILCS 50/1(D)(r) (West 2018)); and (8) the minor is in the temporary custody or guardianship of DCFS, the parent, Darelle F., is incarcerated at the time of the filing of the motion for termination of parental rights is filed, Darelle F. has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented him from discharging his parental responsibilities for the minor (750 ILCS 50/1(D)(s) (West 2018)). The State further contended termination of Darelle F.'s parental rights was in the minor's best interests and asked for custody and guardianship to remain with DCFS; giving them the authority to consent to the minor's adoption.

¶ 12                                C. Fitness

¶ 13          In October 2019, the trial court held a fitness hearing. Darelle F., who was in the

custody of the Macon County Sheriff's Department, attended the hearing, represented by counsel. Matthew Stymets, a foster care caseworker with Webster-Cantrell Hall, testified for the State. Stymets testified he had been L.F.'s caseworker since February 2019 and he was familiar with her case. Stymets testified concerning Darelle F.'s progress toward his service plan goals for the period from October 2016 through October 2017. Stymets testified Darelle F. had not fully complied with parole or drug testing, having been arrested three times while on probation for possession of controlled substances, and he rated that goal unsatisfactory. Stymets confirmed Darelle F. underwent substance abuse, domestic violence, and parenting assessments. He testified Darelle F. had twice weekly visitations with L.F. from approximately January or February 2017 to June 2017 when he was arrested. Stymets testified Darelle F. was arrested in June or July 2017 and has remained in custody since then. Stymets confirmed Darelle F. completed no services following his arrest. Even though Darelle F. satisfactorily completed some service goals, Stymets ultimately rated him as unsatisfactory because he had no visitation with L.F. since his incarceration and would not be able to provide a safe, caregiving environment for L.F. Stymets elaborated that Darelle F. cannot be a return home parent because he can neither provide L.F.'s basic needs nor provide housing.

¶ 14        The State asked the trial court to take judicial notice of a docket entry in Macon County case No. 17-CF-970, from May 24, 2019, indicating Darelle F. was found guilty by a jury of first degree murder and found to have personally discharged the firearm that caused the death of another. Without objection from Darelle F., the court judicially noticed the murder conviction. But the court explained it would consider only what the State read into the record and nothing else from the criminal case. After asking the trial court to admit the exhibit listing Darelle F.'s drug screens, the State rested. Neither Darelle F. nor the guardian *ad litem* (GAL)

presented any evidence.

¶ 15        In its closing statement, the State argued Darelle F. met the definition of an "unfit person" because he "has been incarcerated since July of 2017, he has not completed any services, including visitation since that time." The State went on say, "for all the [nine-month] periods—well, the only period of time that [Darelle F.] has not been incarcerated was between January 26 of 2017 and July of 2017. So he didn't even make the first nine-month period before he was incarcerated. Progress has not been reasonable. It is three years later. We're three years into this, and we're really no closer to a return home of this child to [Darelle]."

¶ 16        In arguing that Darelle F. was not unfit, his counsel pointed the court's attention to the service goals Darelle F. satisfied, namely, completing assessments, establishing paternity, and participating in visitation with L.F. before his incarceration. Counsel argued the State did not prove Darelle F. to be unfit by clear and convincing evidence.

¶ 17        The GAL argued the State proved all eight counts by clear and convincing evidence. Concerning the four counts alleging Darelle F. failed to make reasonable progress during any nine-month period following the adjudication of neglect, the GAL reiterated that "after [Darelle's] arrest, he's not been able to establish housing or visitation or a bond with the child. So with regards to [those counts], I think—well, and then—those have been proven by clear and convincing evidence."

¶ 18        The trial court rendered its decision on the record, expressly stating: "[Darelle F.] as has been pointed out not only in the testimony but in the arguments of counsel as well, to his credit, indeed he did start off reasonably well. However, he was arrested in July of 2017, and he's been continuously incarcerated since that date and essentially has completed no services after his arrest ***. And then, of course, I have taken judicial notice of the fact that on May 24th,

he was found guilty of first degree murder by a jury of his peers." The court found the State proved by clear and convincing evidence that Darelle F. was an "unfit person" pursuant to the eight statutory counts alleged in the petition.

¶ 19                                D. Best-Interests Hearing

¶ 20         The court held the best-interests hearing in November 2019. The State again called caseworker Matthew Stymets as its lone witness. Stymets testified he prepared a best-interests report for the hearing. He testified L.F. had been in a potentially adoptive placement with her maternal grandmother since 2016. Stymets explained L.F. was doing remarkably well in that placement. He testified L.F. and her grandmother enjoyed "an excellent relationship" where L.F. considered her grandmother to be her mom. Stymets confirmed L.F. had never been placed with Darelle. He testified Darelle's only interactions with L.F. came in supervised visits. Stymets testified he could not answer whether L.F. could recognize Darelle F. as her father. Stymets believed that removing L.F. from placement with her grandmother would traumatize her. Stymets testified that it is "in [L.F.'s] best interest for her to be adopted by her grandmother."

¶ 21         The State asked the trial court to consider the best-interests report and to "take judicial notice of the October 10 docket entry in Case Number 2017-CF-970, People v. Darelle F., wherein he was sentenced to 35 years in the Department of Corrections for the offense of first degree murder and an additional 25 years consecutive for personally discharging a firearm which was the proximate cause of death to another person." Darelle F. did not object to either the best-interest report or judicial notice of his criminal sentence. The court stated it would consider the report and take judicial notice of Darelle's sentence. With that, the State rested. Neither Darelle F. nor the GAL presented evidence at this hearing.

¶ 22         After the arguments of counsel, the trial court indicated it had considered the

statutory best-interest factors, labeling most relevant and applicable factors as—"the child's sense of attachment, her sense of security, familiarity, continuity, the least disruptive placement alternative for this child, and perhaps most important of all, this child's need for permanence, including her need for stability and continuity of relationships with parent figures." The court then reviewed Mr. Stymets's written best-interests report and oral testimony, highlighting the following: L.F. was well-bonded to her grandmother, L.F. developed a life for herself with her grandmother, the two have a strong attachment, L.F. is doing remarkably well in preschool, she is happy, and her grandmother provides for L.F.'s health, safety, and welfare. The court noted L.F. would be traumatized if removed from her grandmother. The court concluded the State proved by a preponderance of the evidence that it is in L.F.'s best interest that Darelle F.'s parental rights be terminated.

¶ 23          The trial court's written judgment outlined its findings from the fitness and best-interest hearings. Specifically, the court's order found: (1) the State had proven by clear and convincing evidence that Darelle F. was an unfit person within the meaning of section 1(D) of Illinois' Adoption Act (750 ILCS 50/1(D) (West 2018)) and (2) it was in the best interests of the minor, L.F., and the public that Darelle F. have his residual parental rights and responsibilities terminated as to L.F., and L.F. was relieved of all obligations of obedience and maintenance with respect to Darelle F.

¶ 24          This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26          Respondent argues the trial court erroneously terminated his parental rights because the court's unfitness and best-interest determinations go against the manifest weight of the evidence. We disagree and affirm the trial court's judgment.

¶ 27    The Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)) govern how the State may terminate parental rights. *In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). Together, the statutes outline two necessary steps the State must take before terminating a person's parental rights—the State must first show the parent is an "unfit person" and then the State must show terminating parental rights serves the best interests of the child. *D.F.*, 201 Ill. 2d at 494 (citing the Adoption Act (750 ILCS 50/1(D) (West 1998) and the Juvenile Court Act (705 ILCS 405/2-29(2) (West 1998)). Here, Darelle F. challenges the trial court's determinations at each of these steps. We take his challenges in turn.

¶ 28                              A. Unfitness Finding

¶ 29    "The State must prove parental unfitness by clear and convincing evidence." *In re A.L.*, 409 Ill. App. 3d 492, 500, 949 N.E.2d 1123, 1129 (2011). The Adoption Act provides several grounds on which a trial court may find a parent unfit, including: the parent's failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West 2018)); the parent's failure to make reasonable efforts to correct the conditions that were the basis for the removal of the minor from the parent during any nine-month period following the adjudication of neglect or abuse or dependency under the Juvenile Court Act (750 ILCS 50/1(D)(m)(i) (West 2018)); the parent's failure to make reasonable progress toward the return of the child to the parent during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(i) (West 2018)); and the failure to discharge parental responsibilities due to incarceration (750 ILCS 50/1(D)(r), (s) (West 2018)). Despite these various potential bases for unfitness, "sufficient evidence of one statutory ground *** [is] enough to support a [court's] finding that someone [is] an unfit person." (Internal

quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 83, 19 N.E.3d 227. See *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064, 859 N.E.2d 123, 135 (2006) ("A finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act.") (citing *In re D.D.*, 196 Ill. 2d 405, 422, 752 N.E.2d 1112, 1122 (2001)).

¶ 30     This court pays "great deference" to a trial court's fitness finding "because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." *A.L.*, 409 Ill. App. 3d at 500. We "will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident from a review of the record." *A.L.*, 409 Ill. App. 3d at 500. Since "[e]ach case concerning parental unfitness is *sui generis*, requiring a close analysis of its individual facts" (*In re Jacorey*, 2012 IL App (1st) 113427, ¶ 19, 980 N.E.2d 91), we now turn our attention to the facts of this case.

¶ 31     The State alleged Darelle F. was unfit based on several statutory grounds. Four of the eight counts cited Darelle's failure to make reasonable progress toward the return of the child to the parent during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(i) (West 2018)). The State identified four different nine-month periods: January 26, 2017, to October 26, 2017; October 26, 2017, to July 16, 2018; July 26, 2018, to April 26, 2019; and September 21, 2018, to June 21, 2019. The trial court found that Darelle F. failed to make reasonable progress during any of those four nine-month periods, and he now challenges those findings as against the manifest weight of the evidence.

¶ 32     Darelle F. points to evidence showing his early accomplishments in treatment as proof he made reasonable progress during every nine-month period alleged in the State's petition. The record shows Darelle made some progress during the first few months he received

- 10 -

services. He completed substance abuse, parenting, and domestic violence assessments. He established paternity of L.F., and he engaged in twice weekly visitations with her. He did not test positive for drugs during this time. Understandably, Darelle F. directs our attention to these initial successes to distract us from his later failures. From April through June 2017, Darelle participated in drug and alcohol screenings only three times. He failed to appear 10 times. Likewise, Darelle F. did not comply with terms of his parole. Following his arrest in June or July 2017, Darelle F. stopped services completely and made no further progress. For the first nine-month period alleged (January 26, 2017, to October 26, 2017), Darelle made only slight progress during the first few months and then no progress from June or July onward. We cannot say such progress is reasonable. As we have previously explained, "reasonable progress is an objective standard," measuring whether "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original and internal quotation marks omitted.) *F.P.*, 2014 IL App (4th) 140360, ¶ 88. Darelle F.'s early compliance with services between January and June or July 2017 was not of sufficient quality and would not have allowed the court to return L.F. to his custody in the near future. He completed no services—and made no progress—in July, August, September, or October 2017. When a parent makes zero progress for more than half of the nine-month period, we cannot find his early progress sufficiently demonstrable to qualify as "reasonable progress." Darelle F., therefore, did not make reasonable progress during the nine-month period of January 26, 2017 through October 26, 2017.

¶ 33        Unsurprisingly, Darelle F. likewise relies upon his early accomplishments—*i.e.*, completing required assessments, establishing paternity, and visiting L.F.—to show he made

reasonable progress during any of the other alleged nine-month periods to prevent an unfitness finding. But his "early success is not determinative" in these evaluations. *In re K.H.*, 346 Ill. App. 3d 443, 455, 804 N.E.2d 1108, 1118 (2004). The statutory provision that a parent who does not make reasonable progress toward the return of his child during *any* nine-month period following an adjudication of neglect is an unfit person serves an important purpose—the child's interest in permanency. Indeed, requiring parents to make progress during nine-month intervals "acts to abate the harm that a perpetual lack of permanency inflicts on children." *K.H.*, 346 Ill. App. 3d at 455. "Simply put, a parent is required to make reasonable progress during a nine-month period." *K.H.*, 346 Ill. App. 3d at 455. If the parent fails to make reasonable progress during an entire nine-month period, or any nine-month period the State's petition alleges, he is an unfit person under the statute. Here, the evidence shows that after his arrest in June or July 2017, Darelle F. made absolutely no progress toward L.F.'s return home. The evidence also shows Darelle F. has remained incarcerated since 2017 and will remain incarcerated for the next 60 years. "Time in prison is included in the nine-month period during which reasonable progress must be made." *F.P.*, 2014 IL App (4th) 140360, ¶ 89. The fact that Darelle F.'s personal circumstances prevented him from making reasonable progress is irrelevant to the objective standard. *F.P.*, 2014 IL App (4th) 140360, ¶ 89. Taken together, all the evidence relating to Darelle F. reveals he failed to make demonstrable, quality progress for any nine-month period of time since September 2016. This means Darelle F. failed to make reasonable progress during any of the four nine-month periods the State identified in its petition. The State, therefore, proved Darelle F. an unfit person by clear and convincing evidence. Accordingly, the trial court's unfitness finding that Darelle F. failed to make reasonable progress toward L.F.'s return home during any nine-month period following the adjudication of neglect does not go against the

manifest weight of the evidence.

¶ 34    Because we can affirm the trial court's fitness finding on this basis, we need not consider the other four statutory grounds on which the trial court found Darelle F. unfit. *A.L.*, 409 Ill. App. 3d at 501 (citing *In re Katrina R.*, 364 Ill. App. 3d 834, 842, 847 N.E.2d 586, 593 (2006) ("On review, if there is sufficient evidence to satisfy any one statutory ground, we need not consider other findings of parental unfitness.")).

¶ 35                    B. Best-Interests Determination

¶ 36    Once a trial court finds a parent an "unfit person," it must next consider whether terminating that person's parental rights serves the child's best interests. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004); see also *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80, 966 N.E.2d 1107 (stating, once the trial court finds the parent unfit, "all considerations, including the parent's rights, yield to the best interests of the child"). When considering whether termination of parental rights serves a child's best interests, the trial court must consider several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2018). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for

- 13 -

permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *Daphnie E.*, 368 Ill. App. 3d at 1072. See also 705 ILCS 405/1-3(4.05) (West 2018).

¶ 37     A trial court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53, 74 N.E.3d 1185. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616.

¶ 38     Darelle F. contends the trial court's determination that terminating his parental rights goes against the manifest weight of the evidence because "it would be in the best interests of the child to grow up with family who loves her and has fought for her." He cites no evidence for this conclusion, though. The State, on the other hand, presented copious evidence showing that terminating Darelle F.'s parental rights serves the best interests of L.F. Through testimony and a written report from Mr. Stymets, the State presented the court with the following evidence of L.F.'s best interests: L.F. is well-bonded to her grandmother, the two have an excellent relationship, L.F. developed a life with grandmother and calls her "mom," L.F. is doing remarkably well in preschool, her grandmother takes care of L.F., the two share a strong sense of love and attachment, and the child would be traumatized by removal from her grandmother's home. The State's evidence shows L.F. is indeed growing up with family who loves her and

fights for her—her maternal grandmother.

¶ 39    After reviewing the above evidence, the court opined that two statutory factors weighed heavily in its best-interest determination: first, the child's sense of attachment, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; and, second, the child's need for permanence, including the need for stability. See 705 ILCS 405/1-3(4.05) (West 2018). The court concluded that since L.F. enjoyed a loving relationship with her grandmother and the two were strongly attached, terminating Darelle F.'s parental rights served her best interest. Likewise, because L.F. needed permanence and stability that Darelle could not give her from prison, the court determined that terminating his parental rights served her best interests. We cannot say the trial court's best-interests determination goes against the manifest weight of the evidence.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons stated, we affirm the trial court's judgment.

¶ 42    Affirmed.